1  **POWERHOUSE LEGAL, P.C.**
2  MARC Y. LAZO, SBN: 215998
   mlazo@phlegal.us.com
3  ALEXANDER POWERS, SBN 350967
   apowers@phlegal.us.com
4  21163 Newport Coast Drive, Suite 245
5  Newport Beach, CA 92657
   Phone No.:   (949) 791-4050
6  Fax No.:     (949) 791-4224
7
8  Attorneys for Plaintiff DAVID DO
9
10          **UNITED STATES DISTRICT COURT**
11     **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
12

| 13 | DAVID DO, an individual | |
|----|----|----|
| 14 | Plaintiff, | **CASE NO:** _____ |
| 15 | v. | **COMPLAINT FOR DAMAGES** |
| 16 | COUNTY OF LOS ANGELES, a | **NEGLIGENCE** |
| 17 | public entity; RICHARD | **ATTEMPTED EXTORTION** |
| 18 | DUDGEON, an individual; DEAN | **AIDING & ABETTING** |
|    | BRYAN RAWLINGS, an | **ASSAULT** |
| 19 | individual; CHRISTOPHER | **BATTERY** |
| 20 | QUINTERO, an individual; | **VIOLATION OF THE RACKETEER** |
|    | MICHAEL QUINTERO, an | **INFLUENCED AND CORRPUT** |
| 21 | individual; ERIC CHASE | **ORGANIZATION ACT (RICO), 18** |
| 22 | SAAVEDRA, an individual; | **U.S.C. § 1962** |
|    | CHRISTOPHER MICHAEL | **CIVIL CONSPIRACY** |
| 23 | CADMAN, an individual; | **NEGLIGENT HIRING AND** |
| 24 | QUINTON MCGEE, an individual; | **SUPERVISION** |
|    | ANTHONY RIVERA, an individual; | **TRESPASS TO LAND** |
| 25 | DAVID ANTHONY RODRIGUEZ, | **INTENTIONAL INFLICTION OF** |
| 26 | an individual; MICHAEL COBERG, | **EMOTIONAL DISTRESS** |
|    | an individual; SPENCER THOMAS | **DEFAMATION PER SE** |
| 27 | CORNELIA, an individual; | **CONVERSION** |
| 28 | CORNELIA MEDIA, LLC., a | **TRESPASS TO CHATTEL** |
|    | | **VIOLATION OF PENAL CODE §496** |

1

Nevada corporation; KENNETH CHILDS, an individual; PARAMOUNT INVESTIGATIVE SERVICES, a California corporation; and DOES 1-10.

Defendants.

**DECLARATORY RELIEF**

Plaintiff DAVID DO, an individual, (hereinafter "Plaintiff") brings this action against Defendants COUNTY OF LOS ANGELES (hereinafter "COUNTY"), a public entity; RICHARD DUDGEON (hereinafter "DUDGEON"), an individual; DEAN BRYAN RAWLINGS (hereinafter "RAWLINGS"), an individual; CHRISTOPHER QUINTERO (hereinafter "C. QUINTERO"), an individual; MICHAEL QUINTERO (hereinafter "M. QUINTERO"), an individual; ERIC CHASE SAAVEDRA (hereinafter "SAAVEDRA"), an individual; CHRISTOPHER MICHAEL CADMAN (hereinafter "CADMAN"), an individual; QUINTON MCGEE (hereinafter "MCGEE"), an individual; ANTHONY RIVERA (hereinafter "RIVERA"), an individual; DAVID ANTHONY RODRIGUEZ (hereinafter "RODRIGUEZ", an individual; MICHAEL COBERG (hereinafter "COBERG"), an individual; SPENCER THOMAS CORNELIA (hereinafter "CORNELIA"), an individual; CORNELIA MEDIA, LLC. (hereinafter "C. MEDIA"), a Nevada corporation; KENNETH CHILDS (hereinafter "CHILDS"), an individual; PARAMOUNT INVESTIGATIVE SERVICES (hereinafter "PARAMOUNT"), a California corporation; and DOES 1-10 (collectively "Defendants") based upon knowledge, relevant documents, and information and belief, alleging as follows:

## PARTIES

1.    Plaintiff DAVID DO is and was, at all relevant times hereto, an individual who became the target of a criminal enterprise. The criminal organization targeted Plaintiff with the intent of gaining access to the laptop of one of Plaintiff's clients, ENZO ZELOCCHI (hereinafter "ZELOCCHI"), which contained ZELOCCHI's

2

cryptocurrency assets. On information and belief, ADAM IZA formed the criminal enterprise (hereinafter the "Enterprise") which orchestrated a scheme involving extortion, robbery, assault, kidnapping, and defamation to acquire ZELOCCHI's cryptocurrency.

2.    Plaintiff is informed and believes and thereupon alleges that Defendant COUNTY is, and was, at all relevant times hereto, a public entity duly organized and existing under and by virtue of the laws of the State of California. At all times, Defendant COUNTY was vicariously liable pursuant to Cal. Gov't Code § 815.2 for the all acts alleged herein. This specifically includes the acts of COUNTY's employees who worked for the Los Angeles County Sheriff's Department (hereinafter "LASD") a subdivision of COUNTY.

3.    Plaintiff is informed and believes and thereupon alleges that Defendant RICHARD DUDGEON is an individual residing in California and a former Los Angeles Deputy Sheriff. On information and belief, DUDGEON used his knowledge and experience as a former law enforcement officer to assist IZA and the Enterprise in criminal activities.

4.    Plaintiff is informed and believes and thereupon alleges that Defendant DEAN BRYAN RAWLINGS is an individual residing in California and was an active Los Angeles Deputy Sheriff at all relevant times mentioned. On information and belief, RAWLINGS used his knowledge and experience as a law enforcement officer to assist IZA and the Enterprise in criminal activities.

5.    Plaintiff is informed and believes and thereupon alleges that Defendant CHRISTOPHER QUINTERO is an individual residing in California and was an active Los Angeles Deputy Sheriff at all relevant times mentioned. On information and belief, C. QUINTERO used his knowledge and experience as a law enforcement officer to assist IZA and the Enterprise in criminal activities.

6.    Plaintiff is informed and believes and thereupon alleges that Defendant MICHAEL QUINTERO is an individual and a California resident, and the brother of

Defendant C. QUINTERO. On information and belief, M. QUINTERO participated in the robbery of Plaintiff's personal belongings, forcibly taking Plaintiff's laptop bag as part of the Enterprise's larger extortion campaign targeting ZELOCCHI.

7.     Plaintiff is informed and believes and thereupon alleges that Defendant ERIC CHASE SAAVEDRA is an individual residing in California and was an active Los Angeles Deputy Sheriff at all relevant times mentioned. On information and belief, SAAVEDRA used his knowledge and experience as a law enforcement officer to assist IZA and the Enterprise in criminal activities.

8.     Plaintiff is informed and believes and thereupon alleges that Defendant CHRISTOPHER MICHAEL CADMAN is an individual residing in California and was an active Los Angeles Deputy Sheriff at all relevant times mentioned. On information and belief, CADMAN used his knowledge and experience as a law enforcement officer to assist IZA and the Enterprise in criminal activities.

9.     Plaintiff is informed and believes and thereupon alleges that Defendant QUINTON MCGEE is an individual residing in California and was an active Los Angeles Deputy Sheriff at all relevant times mentioned. On information and belief, MCGEE used his knowledge and experience as a law enforcement officer to assist IZA and the Enterprise in criminal activities.

10.     Plaintiff is informed and believes and thereupon alleges that Defendant ANTHONY RIVERA is an individual residing in California and was an active Los Angeles Deputy Sheriff at all relevant times mentioned. On information and belief, RIVERA used his knowledge and experience as a law enforcement officer to assist IZA and the Enterprise in criminal activities.

11.     Plaintiff is informed and believes and thereupon alleges that Defendant DAVID ANTHONY RODRIGUEZ is an individual residing in California and was an active Los Angeles Deputy Sheriff at all relevant times mentioned. On information and belief, RODRIGUEZ used his knowledge and experience as a law enforcement officer to assist IZA and the Enterprise in criminal activities.

12.     Plaintiff is informed and believes and thereupon alleges that Defendant MICHAEL COBERG is an individual residing in California and was an active Los Angeles Deputy Sheriff at all relevant times mentioned. On information and belief, COBERG used his knowledge and experience as a law enforcement officer to assist IZA and the Enterprise in criminal activities.

13.     Plaintiff is informed and believes and thereupon alleges that Defendant SPENCER THOMAS CORNELIA is an individual and a Nevada resident, and the owner of CORNELIA MEDIA. On information and belief, CORNELIA collaborated with IZA to defame Plaintiff through the publication of false and damaging online content. CORNELIA is alleged to have used his media company, CORNELIA MEDIA, to disseminate defamatory statements as part of the Enterprise, causing reputational harm to Plaintiff.

14.     Plaintiff is informed and believes and thereupon alleges that Defendant CORNELIA MEDIA, LLC. is a Nevada corporation owned by Defendant CORNELIA that, on information and belief, published defamatory content online that damaged Plaintiff's professional reputation. C. MEDIA was a key tool used by CORNELIA and IZA to harm Plaintiff's reputation as part of the Enterprise.

15.     Plaintiff is informed and believes and thereupon alleges that Defendant KENNETH CHILDS is an individual and a California resident, and the manager of PARAMOUNT. On information and belief, CHILDS conducted illegal surveillance on behalf of IZA to assist the Enterprise. CHILDS is further alleged to have used investigative resources to track Plaintiff's whereabouts and movements, relaying this information to the Enterprise.

16.     Plaintiff is informed and believes and thereupon alleges that Defendant PARAMOUNT INVESTIGATIVE SERVICES, is a California corporation with its primary place of business at 633 W. Fifth Street, Los Angeles, California, owned by Defendant CHILDS that, on information and belief, participated in illegal surveillance of Plaintiff in furtherance of the Enterprise. PARAMOUNT was utilized by CHILDS

5

1    and the co-defendants to gather private information about Plaintiff to be used in
2    furtherance of their criminal activities.

3         17.    The true names and capacities of Defendants DOES 1 through 10, inclusive,
4    are unknown to Plaintiff who therefore sues said defendants by such fictitious names.
5    Plaintiff will seek leave of Court to amend this Complaint when said true names and
6    capacities have been ascertained. Plaintiff is informed and believes and based upon such
7    information and beliefs alleges that all Defendants sued herein as DOES are responsible
8    in some manner for the occurrences alleged herein, and such Defendants directly and
9    proximately caused Plaintiff's injuries as alleged herein.

10        18.    Plaintiff is informed and believes that each of these fictitiously named
11   defendants is in some manner responsible for the events and damages alleged herein,
12   and that at all times relevant herein, Does 1 through 10, and each of them, was the
13   principal, agent, representative, partner, joint-venturer, co-conspirator, employee or alter
14   ego of each of the other Defendants, and in doing the things alleged herein was acting
15   within the course and scope of such relationship with the full knowledge, consent,
16   authority and/or ratification of each of the other Defendants.  Further, each and all of the
17   acts herein alleged as to each of the Defendants was authorized and directed by the
18   remaining Defendants, who ratified, adopted, condoned, and approved said acts with full
19   knowledge of the consequences thereof.

20        19.    Non-party ENZO ZELOCCHI is an individual and a California resident.
21   ZELOCCHI is engaged in various business ventures, including A-Medicare, a healthcare
22   platform aimed at providing secure access to universal healthcare. Plaintiff was hired by
23   ZELOCCHI to assist in the development of the A-Medicare website, establishing their
24   professional association. As part of his business activities, ZELOCCHI maintains
25   significant cryptocurrency assets stored on his personal laptop, which became a central
26   target of the Defendants' criminal activities. Defendants' actions, including their
27   attempts to acquire ZELOCCHI's laptop from Plaintiff, were aimed at gaining access to
28   these assets. Defendants' actions have caused significant harm to both Plaintiff and

COMPLAINT

ZELOCCHI's professional reputations.

## **JURISDICTION AND LIABILITY**

20.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (Federal Question) for claims arising under the Racketeer Influenced and Corrupt Organizations Act (RICO) 18 U.S.C. §§ 1961–1968.

21.    The Court also has supplemental jurisdiction over related state law claims under 28 U.S.C. § 1367.

22.    The Defendants committed torts and crimes in the State of California as alleged herein, establishing personal jurisdiction in this Court. Additionally, Defendant's intentional and wrongful actions aimed at Plaintiff, a California resident, further support jurisdiction.

23.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to the claims occurred in this district.

24.    A public employee is liable for damages caused by his act or omission to the same extent as a private person. Cal. Govt. Code § 820.

25.    Further, public entities such as COUNTY are liable for damages proximately caused by an act or omission of an employee of the public entity if such act or omission gives rise to liability against that employee directly. Cal. Gov't. Code § 815.2.

26.    Plaintiff was unaware of the facts establishing the claims alleged herein, specifically the involvement of COUNTY employees in IZA's criminal enterprise, until after the filing of *United States of America v. Adam Iza*, C.D. Cal. Case No. 2-24-cr-00630-PA on September 24, 2024. The indictment alleges that IZA had several LASD deputy sheriffs, including the named corrupted deputies Defendants on his payroll. These deputies acted as enforcers for IZA in activities involving theft, extortion, and the violation of individuals' Constitutional rights. Plaintiff was confirmed to be one of the targets of IZA's Enterprise in later plea agreements. IZA's Enterprise was aided by the corrupted deputies who utilized their authority and resources to threaten and extort

COMPLAINT

Plaintiff for the purpose of obtaining assets, particularly the cryptocurrency assets believed to be in the possession of Plaintiff.

27.   Plaintiff was not—and could not—have been aware of the facts establishing his claims, namely the involvement of the corrupted sheriffs' deputies in IZA's Enterprise, until he became aware of those facts after November 24, 2024, a mere two months after the filing of the lawsuit *United States of America v. Adam Iza*, C.D. Cal. Case No. 2-24-cr00630-PA. Plaintiff could not have discovered those facts any sooner through the exercise of reasonable and diligent investigation, as the relevant evidence regarding the deputies' involvement was solely in the possession of Defendants and not accessible to Plaintiff.

28.   Accordingly, Plaintiff did not know that he possessed claims against the COUNTY, or any of the corrupt sheriffs—or any civil servants whatsoever— prior to his discovery after November 24, 2024. Therefore, the statute of limitations for the causes of action alleged herein were tolled until after November 24, 2024, when Plaintiff first became aware of the involvement of COUNTY employees in IZA's criminal enterprise.

29.   When Plaintiff learned of the involvement of COUNTY employees in IZA's criminal enterprise after November 24, 2024, Plaintiff timely filed his California Government Claims for Damages with the County of Los Angeles, Board of Supervisors pursuant to the California Tort Claims Act ("CTCA"), Cal. Gov't Code § 900 et seq. on May 21, 2025.

30.   Plaintiff's Government Claims for Damages was returned to Plaintiff on June 24, 2025 the incorrect basis that it was untimely submitted. Notably, Plaintiff followed up repeatedly with the COUNTY to determine why the COUNTY took this position, to no avail. Plaintiff was never able to speak with anyone from the COUNTY with any knowledge or authority in this regard, and was repeatedly given the runaround.

31.   In the seminal case of *Ebersol v. Cowan* (1983) 35 Cal.3d 427, the California Supreme Court held the plaintiff's ignorance of her cause of action (coupled

with her efforts to retain counsel) was grounds for excusable neglect of her late-filed claim, and the public entity was estopped from denying her claim on grounds of untimeliness.   Likewise here, Plaintiff was wholly and justifiably ignorant of the involvement of the LASD or the corrupted deputies until he discovered the facts underlying the same.  Once Plaintiff discovered the facts giving rise to his claims, he sought to retain counsel in order to attempt to recover damages against the relevant government entity and its employees.

32.    On September 18, 2025, Plaintiff timely submitted to the Board of Supervisors of the County of Los Angeles his Application for Leave to Present a Late Claim Pursuant to Govt Code § 911.4, to which no response has been received.

33.    Moreover, the relevant statutes of limitation as to all claims were otherwise equitably tolled during the lengthy period after which Plaintiff began assisting the various investigative authorities with their investigation of the Enterprise.

34.    Plaintiff was repeatedly told by the various investigative authorities to whom he reported the subject incidents that they could not disclose any facts pertaining to a pending criminal investigation, including the identities of any individuals involved.

35.    Plaintiff was not only advised by the investigative authorities who were conducting the criminal investigations of the Defendants in this matter, that they could not disclose any information to him; he was specifically told not to initiate a civil action against these Defendants or others while the criminal investigations were ongoing, as doing so could compromise the efforts of those law enforcement agencies. As a result of Claimant's compliance, many of the Defendants to this action have been charged and convicted.

## FACTUAL BACKGROUND

### I.    Formation of the Enterprise and Pattern of Racketeering Activity

36.    This lawsuit arises from a series of coordinated criminal and unlawful acts by a criminal organization aimed at unlawfully acquiring ZELOCCHI's cryptocurrency, intimidating Plaintiff, and engaging in other unlawful acts. The enterprise engaged in

COMPLAINT

racketeering activities including extortion, fraud, robbery, kidnapping, criminal copyright infringement, obstruction of justice, and violations of the Computer Fraud and Abuse Act (CFAA). As explained in further detail below, the enterprise targeted Plaintiff with the goal of acquiring ZELOCCHI's laptop, which the enterprise mistakenly believed contained all of ZELOCCHI's cryptocurrency assets. These activities caused substantial harm to Plaintiff, including financial losses, damage to his reputation, emotional distress, and physical harm. These criminal acts against Plaintiff and ZELOCCHI are the subject of a federal civil complaint filed by ZELOCCHI against the members of the aforementioned criminal enterprise. ZELOCCHI's case against the enterprise is styled *Enzo Zelocchi v. Adam Iza et al*, and was filed in United States District Court for the Central District of California bearing case number 2:24-cv-9601-WLH(JPRx) (hereinafter the "Federal Case"). Additionally, ZELOCCHI also filed a complaint in this court against LASD styled *Enzo Zelocchi v. Los Angeles County Sheriff's Department, A Law Enforcement Agency, et al,* bearing case number 25STCV12990 (hereinafter the "State Case"). As explained below, several of the named defendants in the Federal Case were employed by Defendant COUNTY.

37.    The Federal Case alleges that ADAM IZA (hereinafter "IZA"), IRIS AU (hereinafter "AU"), TROY WOODY JR. (hereinafter "WOODY JR."), KATY WOODY (hereinafter "K. WOODY"), DUDGEON, RAWLINGS, C. QUINTERO, M. QUINTERO, SAAVEDRA, CORNELIA, C. MEDIA, CHILDS, PARAMOUNT, and DOES 1-10 (collectively, the "Federal Defendants"), formed an association-in-fact enterprise (the "Enterprise") within the meaning of 18 U.S.C. § 1961(4). The Enterprise engaged in a pattern of racketeering activity, including but not limited to, extortion, fraud, robbery, kidnapping, criminal copyright infringement, obstruction of justice, criminal impersonation, and violations of the Computer Fraud and Abuse Act ("CFAA"). The Enterprise's primary objective was unlawfully acquiring ZELOCCHI's cryptocurrency, beginning when WOODY JR. initially targeted ZELOCCHI in California. IZA, after being introduced to WOODY JR. by their mutual associate Milad

COMPLAINT

Sarwari, began collaborating with WOODY JR. to carry out this goal. Plaintiff is informed and believes and thereon alleges that at least nine members of the Enterprise, namely DUDGEON, RAWLINGS, SAAVEDRA C. QUINTERO, CADMAN, MCGEE, RIVERA, RODRIGUEZ, and COBERG (collectively the "Corrupted Deputies"), were directly affiliated with COUNTY through LASD. RAWLINGS, SAAVEDRA C. QUINTERO CADMAN, MCGEE, RIVERA, RODRIGUEZ, and COBERG are currently, or were during the course of their criminal acts, deputy sheriffs employed by LASD, while DUDGEON is a retired LASD deputy.

38.     The Enterprise was formed with the primary objective of unlawfully acquiring ZELOCCHI's cryptocurrency by force, threats, and deception, using intimidation tactics against both ZELOCCHI and individuals associated with him, namely Plaintiff. Initially, WOODY JR. targeted ZELOCCHI attempting to extort him through access to his laptop. This laptop became the primary target of the Enterprise due to its belief that it contained all of ZELOCCHI's cryptocurrency assets. Plaintiff is informed and believes that the Enterprise mistakenly believed that Plaintiff had come into possession of the targeted laptop, and this belief led to the Enterprise targeting Plaintiff. When WOODY JR. was later incarcerated in the Philippines for murder, he continued his extortion efforts remotely, eventually conspiring with IZA. This connection, facilitated by Sarwari, helped solidify their shared intent to seize ZELOCCHI's cryptocurrency by any means necessary.

39.     On or about September 23, 2024, the Department of Justice filed a criminal complaint against IZA bearing Case No. 2:24-mj-05809 in the Central District of California for conspiracy against rights and evasion of tax assessments (the "Criminal Complaint"). The investigation, spearheaded by the Federal Bureau of Investigation (FBI), uncovered significant evidence of extortion, fraudulent activities, and criminal conspiracy involving IZA and other co-conspirators. The Criminal Complaint further corroborates the racketeering activities alleged in this action, as the same extortion and criminal conduct are detailed in both proceedings. The filing of the Criminal Complaint

also served to put Plaintiff on notice of the involvement of the Corrupted Deputies and their employment status with COUNTY and LASD. Prior to the filing of the Criminal Complaint Plaintiff did not know, nor did he have any reason to know, that IZA and the Enterprise were being aided by active employees of COUNTY and LASD.

40.     On or about January 17, 2025 IZA agreed to plead guilty to his charges of conspiracy against rights, wire fraud and tax evasion. (hereinafter "IZA Plea"). SAAVEDRA was separately charged on or about January 17, 2025 with conspiracy against rights and subscribing to a false tax return. SAAVEDRA has also agreed to plead guilty to his charges. (hereinafter "SAAVEDRA Plea"). Additionally, CADMAN  and RODRIGUEZ have both entered guilty pleas, with RODRGUEZ entering his guilty plea on July 14, 2025 and CADMAN entering his guilty plea on August 7, 2025. Both IZA and SAAVEDRA's plea agreements serve as confirmation for many of the facts alleged herein.

41.     FBI investigative findings demonstrate a coordinated effort between IZA and WOODY JR., along with others, to intimidate and extort ZELOCCHI. Evidence, including text messages and financial records, shows that IZA and WOODY JR. worked in concert to target and harm both ZELOCCHI and Plaintiff. This collaboration began after their introduction by Milad Sarwari and continued during WOODY JR.'s incarceration for murder in the Philippines. IZA provided support to WOODY JR.'s efforts to extort ZELOCCHI's cryptocurrency, and WOODY JR.'s mother and father, K. WOODY and WOODY SR., played crucial roles by providing financial assistance to facilitate their ongoing criminal activities. K. WOODY and TROY WOODY's (hereinafter "WOODY SR."), involvement helped sustain WOODY JR.'s ability to coordinate with IZA and others, further reinforcing their participation in a single, unified RICO conspiracy.

## II.    Pattern of Racketeering Activity

42.     During a meeting at the Chamberlain Hotel, WOODY JR. accessed ZELOCCHI's laptop (hereinafter the "Laptop") without permission while the

ZELOCCHI was in the restroom, changing the password. This breach enabled subsequent extortion attempts, with threats to permanently lock ZELOCCHI out of his laptop and cryptocurrency accounts.

43.    Following this meeting, ZELOCCHI received a threatening email demanding $1 million in bitcoins. The sender, identifying himself with the UGNAZI "hacktivist" group, threatened to ruin ZELOCCHI's career and harm his loved ones if the demands were not met. These threats extended to graphic and vulgar emails and text messages, where WOODY JR. threatened ZELOCCHI's family's safety, leveraging the UGNAZI identity to instill fear and compliance.

44.    CHILDS, through PARAMOUNT, was hired by IZA to conduct unauthorized surveillance on ZELOCCHI. It was through this illegal surveillance of ZELOCCHI that the Enterprise first became aware of Plaintiff, and his possession of one of ZELOCCHI's laptops. Plaintiff is informed and believes that the Enterprise mistakenly believed that Plaintiff was in possession of the targeted Laptop, when in fact Plaintiff never possessed the targeted Laptop but rather a different laptop owned by ZELOCCHI. This surveillance included photography and video recording within ZELOCCHI's private residence, and the information gathered was used by Defendants to plan and execute multiple attacks attempting to gain possession of the Laptop, including the robbery of Plaintiff.

45.    IZA, DUDGEON, and RAWLINGS, armed with firearms, forcibly detained ZELOCCHI at an Arco gas station in Corona, California. ZELOCCHI was able to escape and flee into the gas station where he then called 9-1-1. This attempted kidnapping was confirmed by IZA in his plea agreement. (IZA Plea 19:22-28). At this point, ZELOCCHI's assailants quickly took three bags from ZELOCCHI's car and fled the scene. They believed the bags in ZELOCCHI's car contained his cryptocurrency-laden Laptop. This kidnapping and robbery occurred after conspiring with WOODY JR., who helped IZA plan and coordinate the kidnapping as an alternative means of acquiring the Laptop and ZELOCCHI's cryptocurrency. Plaintiff is informed and believes and

thereon alleges that IZA, WOODY JR., K. WOODY, and WOODY SR. had planned to capture ZELOCCHI and take the Laptop.

46.    Shortly thereafter, IZA, DUDGEON, and RAWLINGS sought to provide false statements to law enforcement officers to evade arrest and cover up their actions. IZA, DUDGEON, and RAWLINGS called 9-1-1 themselves to falsely claim that they had taken ZELOCCHI's bags "by accident" while purportedly rescuing their employer and would be returning them. They met with Riverside County Deputy Sheriff Todd Halbeisen ID# 4106 (hereinafter "Halbeisen"), the deputy in charge of the investigation involving ZELOCCHI's attempted kidnapping, at a different location and provided him with a false narrative, alleging that ZELOCCHI had stolen IZA's laptop, that ZELOCCHI attempted to kidnap IZA, and that DUDGEON and RAWLINGS had arrived just in time to rescue IZA. Despite IZA's claims, responding deputies who were asked to search ZELOCCHI's vehicle for IZA's alleged stolen laptop were unable to locate a laptop matching IZA's provided description.

47.    The police report filed by Deputy Halbeisen (Riverside County Sheriff's Incident Report #E213250015) appeared biased, documenting extensive personal information about ZELOCCHI while providing minimal details about IZA, DUDGEON, and RAWLINGS. In the report, it noted that Halbeisen viewed surveillance tapes from the Arco gas station's mini-mart and that he observed the presence of what appeared to be firearms in the hands of DUDGEON and RAWLINGS. However, Halbeisen could not conclude that their actions amount to crimes because DUDGEON and RAWLINGS had claimed that they were in the act of "rescuing" IZA, their employer. Despite the clear discrepancies in the statements and the strong indicators supporting ZELOCCHI's account, including observations made by Halbeisen himself that were found within the report, Deputy Halbeisen refrained from further investigation. It is believed that Halbeisen's reluctance was due to DUDGEON's and RAWLINGS' involvement, one of whom was an off-duty Los Angeles County Sheriff Deputy and the other a retired, former Los Angeles County Sheriff's Deputy. This connection raises concerns about

potential bias or undue influence in the handling of the case. When ZELOCCHI inquired about the report and the investigation, Deputy Halbeisen refused to pursue the matter further, effectively obstructing justice. Deputy Halbeisen's failure to take action against IZA and his associates allowed the Enterprise the opportunity to continue their criminal activity, much to the detriment of ZELOCCHI and Plaintiff, who were each targeted by the Enterprise on many more occasions, as outlined below.

## III.    The Enterprise's Criminal Acts Against Plaintiff

48.     The Enterprise, as previously mentioned, targeted Plaintiff in a series of coordinated criminal actions. The Enterprise mistakenly believed that Plaintiff was in possession of ZELOCCHI's Laptop. This confusion was confirmed by IZA in his plea agreement. (IZA Plea 20:22-28). Plaintiff had a business relationship with ZELOCCHI and had been hired to develop a website for ZELOCCHI. The Enterprise's mistaken belief that Plaintiff possessed the Laptop stemmed from illegal surveillance of ZELOCCHI and Plaintiff's interactions. As mentioned above, this illegal surveillance was conducted by CHILDS through PARAMOUNT. Plaintiff is informed and believes that the Enterprise illegally surveilled a meeting held between Plaintiff and ZELOCCHI. During the meeting, Plaintiff met with ZELOCCHI to review the progress of the website Plaintiff was redesigning for ZELOCCHI's business venture. After the meeting, Plaintiff left with his own laptop bag, and members of the Enterprise assumed it contained ZELOCCHI's Laptop, either as a mistake or as part of an effort to intimidate and potentially gain access to ZELOCCHI's assets.  The wrongful targeting of Plaintiff was intended to further the Enterprise's broader scheme of extorting cryptocurrency from ZELOCCHI by intimidating those associated with him, including Plaintiff.

49.     On evening, Plaintiff was walking to his vehicle, which was parked on Garden Grove Boulevard just east of 6000 Garden Grove Boulevard, when he was approached from behind. Plaintiff is informed and believes and thereon alleges that the man who approached him was M. QUINTERO, acting under the direction of IZA and the Enterprise. Plaintiff was knocked to the ground by M. QUINTERO who then forcibly

took Plaintiff's laptop bag, mistakenly believing it contained ZELOCCHI's Laptop with cryptocurrency. Plaintiff's bag did not contain ZELOCCHI's Laptop with cryptocurrency, but rather contained a different laptop owned by ZELOCCHI, one of Plaintiff's laptops, and Plaintiff's smartphone.

50.     Following the theft of Plaintiff's laptop bag, the Enterprise continued its extortionate efforts. Plaintiff began receiving a series of threatening text messages from over ten different phone numbers demanding that he return the Laptop allegedly in his possession. This marked the second occasion on which Plaintiff received threatening texts from the Enterprise, as Plaintiff had also previously received threatening texts. These latest threats, which included violent threats against Plaintiff and his family, were also made by individuals acting under IZA's direction. The threats were a direct continuation of the Enterprise's mistaken belief that Plaintiff possessed ZELOCCHI's Laptop. Among these threatening text messages were pictures of Plaintiff's friends and family, followed by direct threats to harm them and Plaintiff. By way of example, one text threatened "your family will be asking you what happened at the next funeral." Another message read "David Do. You think you can fool me? When I get my hands on you I will make you scream much louder than last time's warning shot." In another message, the sender refers to Plaintiff as a "Pathetic Chinese faggot" and promises that "You won't scream 'WHY' You'll scream STOP." Finally, one message threatened "we are not leaving until we have the laptop or you're dead." These threats left Plaintiff in constant fear for his own life and in fear for the safety of his loved ones.

51.     Later, Plaintiff's vehicle was vandalized by individuals believed to be acting under IZA's orders. The assailants used a weapon to smash the rear window, both taillights and side mirrors, along with the windshield of Plaintiff's car. Additionally, the body of the car was dented by what appeared to be someone kicking it, as evidenced by a shoe print along the left passenger door. The damage to Plaintiff's vehicle was severe and calculated, intended to intimidate him into complying with the Enterprise's demands. This act of vandalism was part of the continuing extortion and intimidation

COMPLAINT

campaign, which was ultimately aimed at ZELOCCHI through the targeting of Plaintiff. The Enterprise further continued its intimidation campaign when, an unidentified assailant, believed to be acting under IZA's direction, threw a cement brick through the back kitchen window of Plaintiff's residence. This act of vandalism was accompanied by more threatening text messages. The ongoing threats and harassment aimed at Plaintiff were part of the Enterprise's broader scheme to force compliance with their demand for ZELOCCHI's Laptop which they believed was in Plaintiff's possession.

52.    Following the vandalization of Plaintiff's property, ZELOCCHI's apartment in Los Angeles was forcibly entered by three men armed with guns and knives, one of whom was IZA. IZA and the other intruders attempted to push their way into the apartment after successfully kicking in the front door. In self-defense, ZELOCCHI fired several shots from his firearm, causing the intruders to flee. The incident was documented by the Los Angeles Police Department under Incident #22033000000220 and was later confirmed to have been perpetrated by IZA and his associates. (IZA Plea 20:26-28, 21:1-4). Despite providing this information to law enforcement, no immediate arrests were made. Following this event, IZA continued to harass ZELOCCHI and Plaintiff, including sending a Telegram message to ZELOCCHI with a video of the home invasion. During IZA's harassment of ZELOCCHI and Plaintiff, IZA sent telegram messages in which he asserted that he was an affiliate of the terrorist organization ISIS.

53.    Following many unsuccessful attempts to extort Plaintiff and Zelocchi, The Enterprise began a new tactic. A member of the Enterprise, CORNELIA, through C. MEDIA, engaged in a defamatory campaign targeting both Plaintiff and ZELOCCHI, working in concert with IZA and WOODY JR. to further the objectives of the Enterprise. This campaign included the production and dissemination of multiple defamatory videos on YouTube, Rumble, Reddit, TikTok, and other social media platforms. In these videos, CORNELIA appeared on camera, delivering a fabricated and elaborate narrative falsely portraying IZA as a victim and accusing both Plaintiff and ZELOCCHI of criminal

activity and fraudulent behavior. This narrative was crafted by IZA and WOODY JR. in collaboration with CORNELIA, and was laced with accusations that, ironically, mirrored the very actions and criminal behavior that IZA and his co-conspirators had committed against Plaintiff and ZELOCCHI. Nearly every aspect of CORNELIA's fabricated narrative could be traced back to actions that IZA and his co-conspirators had taken against Plaintiff and ZELOCCHI. The videos featured publicly available images and video clips of Plaintiff sourced from the internet, along with surveillance photos taken by PARAMOUNT, some of which were deceptively altered to support the false narrative created by IZA and WOODY JR. Additionally, in one of the videos, CORNELIA included a segment that showed a clip from a privately recorded video stored exclusively on one of Plaintiff's stolen devices. CORNELIA used the clip to mock Plaintiff's appearance, ending with an ominous comment intended to intimidate Plaintiff, suggesting that he may eventually find himself running away in fear. This inclusion of stolen footage serves as circumstantial evidence of IZA's involvement in the theft of Plaintiff's devices and his connection with WOODY JR. and CORNELIA.

54.     Later, IZA sent a telegram message to ZELOCCHI boasting about his ongoing efforts to destroy ZELOCCHI's life and further coercing him to comply with his demands. During this message, IZA admitted to working in collaboration with WOODY JR., CORNELIA, and another associate, Mir Islam, to execute their defamatory campaign against Plaintiff and ZELOCCHI. It is believed that discovery will reveal evidence of a $20,000 payment from IZA to CORNELIA as part of an agreement to create and distribute the defamatory content, which IZA and WOODY JR. had threatened would ruin both ZELOCCHI and Plaintiff's reputation. It is further believed that discovery will reveal that IZA also promised CORNELIA a percentage of ZELOCCHI's cryptocurrency assets once the robbery and extortion was successful. The defamatory campaign also extended to a petition published on change.org, which further damaged the reputations of both Plaintiff and ZELOCCHI.

55.     Additionally, the Enterprise, likely through CORNELIA and C. MEDIA

orchestrated an elaborate scheme to criminally impersonate Plaintiff by hacking Disneyland's Instagram account and posting defamatory content that falsely framed Plaintiff as responsible for the breach. This content included derogatory captions and fabricated statements that portrayed Plaintiff as a hacker, causing significant public humiliation and irreparable damage to his online reputation. The incident was part of the broader racketeering scheme aimed at coercing and intimidating Plaintiff in order to indirectly pressure ZELOCCHI into compliance with Defendants' demands. Moreover, this portrayal of Plaintiff as a hacker was later used by IZA in a frivolous lawsuit filed against both ZELOCCHI and Plaintiff. In that lawsuit, IZA falsely alleged that Plaintiff was a hacker acting as an accomplice to ZELOCCHI's purported criminal activities. IZA sought to exploit the public attention generated by the criminal impersonation and media coverage of the Disneyland hack to bolster his fabricated narrative. This manipulation of the media and subsequent litigation illustrates the Enterprise's ongoing efforts to damage both Plaintiff and ZELOCCHI's reputations as part of their coordinated campaign of extortion and intimidation.

56.   DUDGEON, RAWLINGS, SAAVEDRA C. QUINTERO CADMAN, MCGEE, RIVERA, RODRIGUEZ, and COBERG abused their positions as law enforcement officers to illegally access non-public information about Plaintiff and ZELOCCHI. Specifically, Plaintiff is informed and believes and thereon alleges that the Corrupted Deputies utilized resources provided to them by LASD. It has been revealed in SAAVEDRA's plea agreement that SAAVEDRA lied in a sworn affidavit in order to obtain a warrant to track Plaintiff's location via his phone's GPS. (SAAVEDRA Plea 28:8-20). It is believed that discovery will reveal other instances of SAAVEDRA, along with other LASD employees using their positions to illegally obtain information about Plaintiff and ZELOCCHI. This misuse of law enforcement resources enabled the Enterprise to locate and target both individuals with precision, carrying out multiple coordinated attacks that resulted in financial and emotional harm.

57.   WOODY JR., K. WOODY, WOODY SR., and IZA conspired to

orchestrate a series of attacks against Plaintiff, intending to obtain ZELOCCHI's Laptop. As part of the conspiracy, they enlisted other members of the Enterprise, including the Corrupted Deputies, who played key roles in planning and executing the attacks. The conspiracy also involved efforts to obstruct law enforcement investigations, using intimidation tactics and financial resources to maintain the momentum of their criminal enterprise. Plaintiff is informed and believes that the Corrupted Deputies utilized their connections and resources within LASD to further the interests of the Enterprise to the detriment of Plaintiff and ZELOCCHI.

58.    WOODY SR., along with his wife K. WOODY, played a crucial role in aiding and abetting the Enterprise by providing financial support to their son, WOODY JR., and co-conspirator IZA. Both WOODY SR. and K. WOODY's involvement was not passive or incidental; they actively facilitated the extortion scheme by coordinating and supplying funds that were critical in sustaining the Enterprise's criminal activities. These funds were used to further the extortion attempts, including financing WOODY JR.'s continued coordination with IZA and other members of the Enterprise following his incarceration for murder in the Philippines. Moreover, based on screenshotted conversations between WOODY SR., K. WOODY, and their son, they were fully aware of and in support at least one of the Enterprises criminal acts, namely the kidnapping of ZELOCCHI as part of the broader scheme to extort cryptocurrency. WOODY SR. and K. WOODY's financial assistance and support for these criminal activities enabled the ongoing criminal efforts directed at ZELOCCHI and Plaintiff, including attacks designed to extort cryptocurrency and undermine their reputations. Their involvement is further evidenced by communications, financial records, and messages directly linking them to the broader conspiracy, highlighting their significant role in furthering the Enterprise's illegal objectives.

## IV.    The Plea Agreements of IZA and SAAVEDRA Conclusively Establish the Facts Alleged Herein

59.    As explained above, both IZA and SAAVEDRA entered into plea

agreements in January 2025, which confirm many of the facts alleged herein. In this regard, IZA and SAAVEDRA have each judicially admitted their respective involvement in the overarching conspiracy perpetrated by the Enterprise.

60.    Specifically, IZA admitted the following facts in his plea:

a.  "[D]efendant hired off-duty Los Angeles County Sheriff Department ("LASD") deputies to provide him with personal security." (IZA Plea 17:24-26).

b.  "Defendant knowingly and intentionally conspired with these law enforcement officers to obtain confidential law enforcement information, personally identifiable information ("PII") about persons with whom defendant had financial and other disputes (the "victims"), and court-authorized search warrants to track down and harass the victims.  While using the sobriquet "The Godfather," defendant also knowingly and intentionally enlisted the LASD deputies to intimidate and threaten these victims.  These actions deprived these victims of their free exercise and enjoyment of rights secured to them by the Constitution and laws of the United States, that is, the right to be free from unreasonable searches and seizures and the right to be free from deprivation of liberty and property without due process of law by one acting under color of law." (IZA Plea 17:27-28, 18:1-11).

c.  "[W]hile defendant and Victim E.Z. were meeting outside a gas station/convenience store in Riverside County, and for the purpose of obtaining a laptop containing large amount of cryptocurrency ("the Laptop") that defendant believed to be in the possession of Victim E.Z, one of defendant's bodyguards brandished a firearm at Victim E.Z. at defendant's direction, at which point Victim E.Z. ran and called 911." (IZA Plea 19:22-28).

d.  "[A]t defendant's direction, LASD deputies in the defendant's employ accessed and/or used sensitive and confidential law enforcement databases to

obtain personal identifying information regarding Victim E.Z., Victim D.D., their family members and acquaintances, and others, in violation of LASD policies restricting the use of such databases to official LASD business." (IZA Plea 20:1-7).

e. "[D]efendant and an LASD deputy employed by defendant discussed and agreed that the deputy would attempt to locate Victim E.Z. by obtaining a search warrant related to Victim E.Z.'s telephone number." (IZA Plea 20:8-11).

f. "[T]he LASD deputy applied for and obtained a search warrant from a Los Angeles County Superior Court judge for GPS location information associated with multiple telephone numbers, including Victim E.Z.'s telephone number; in the sworn affidavit supporting the warrant application, the LASD deputy falsely stated that Victim E.Z.'s telephone number was associated with a suspect in a firearms investigation." (IZA Plea 20:12-18).

g. "[A]t defendant's direction, the LASD deputy used the GPS location information obtained from the warrant to locate Victim E.Z. and a residence where Victim E.Z. was staying." (IZA Plea 20:19-21).

h. "[A]n individual employed by defendant and at defendant's direction assaulted Victim D.D. and stole a laptop, mistakenly believed by defendant to be the Laptop, from Victim D.D." (IZA Plea 20:22-24).

i. "[D]efendant relayed information to a third party about his desire to have Victim E.Z. relinquish the Laptop through use of force if necessary. As a result, the third party caused three armed individuals to force entry into Victim E.Z.'s residence and use firearms to force Victim E.Z. to relinquish the Laptop." (IZA Plea 20:26-28, 21:1-3).

61. Further, SAAVEDRA admitted the following facts in his plea:

a. "At all times relevant to this Factual Basis, defendant ERIC CHASE SAAVEDREA ("defendant") was a sworn law enforcement officer employed

by the Los Angeles County Sheriff's Department ("LASD"). Defendant was a detective assigned to LASD's Operation Safe Streets Bureau. Defendant also served as a federal task force officer assigned to the U.S. Marshals Service's Pacific Southwest Regional Fugitive Task Force. As a LASD deputy, defendant was subject to an oath of duty and rules of conduct. This oath and these rules prohibited LASD personnel from using their law enforcement status and related equipment for personal use or for non-legitimate law enforcement purposes." (SAAVEDRA Plea 22:4-14).

b. "[O]ne or more LASD deputies who had recently worked security for a wealthy individual named Adam Iza ("Iza") at Iza's mansion in Bel Air told defendant that Iza was interested in procuring security-related services from defendant. Defendant met with Iza soon thereafter, and Iza engaged Saavedra & Associates to provide security services for him that same month." (SAAVEDRA Plea 23:5-10).

c. "Although Iza's security-related needs varied, defendant typically staffed teams of at least two security guards to accompany Iza twenty-four hours per day and seven days per week. The teams of security guards typically worked in twelve-hour shifts. Defendant recruited approximately 20 to 25 LASD deputies, as well as at least one former LASD deputy and a sibling of a LASD deputy, to work the shifts. Defendant occasionally worked the shifts himself. The LASD deputies, including defendant, typically carried firearms while working for Iza and sometimes displayed their LASD badges." (SAAVEDRA Plea 23:11-19).

d. "These services continued until Iza's arrest by federal agents in or around September 2024." (SAAVEDRA Plea 24:8-9).

e. "[D]efendant regularly used his LASD credentials to access sensitive law enforcement databases and confidential databases to obtain PII for Iza, his private client. This included PII regarding people with whom Iza had personal

and/or business disputes, their associates, and their family members. Defendant sometimes tasked LASD deputies working for Saavedra & Associates to secure PII for Iza, as well." (SAAVEDRA Plea 24:21-27).

f.  "Defendant and other LASD deputies supplied Iza with PII relating to Victim R.C., Victim E.Z, Victim D.D., their associates, and their family members, among others.  Although defendant did not always know how Iza intended to use the PII, defendant generally understood that Iza could use the PII, among other things, to locate individuals and/or property Iza wanted to take from people, and potentially to intimidate, threaten, and/or harass people and to commit crimes." (SAAVEDRA Plea 25:6-13).

g.  "[D]efendant, another LASD deputy, LASD Deputy 7, Iza, and one of Iza's associates, Individual 2, traveled to Victim D.D.'s residence in Orange County to confront Victim D.D.  Victim D.D. refused to open the door and spoke to the group through a window.  Defendant identified himself as a law enforcement officer, displayed his badge, and told Victim D.D. that a stolen laptop was pinging at Victim D.D.'s residence.  Victim D.D. denied possessing a stolen laptop, and someone contacted the police, who arrived soon after.  The police spoke with Victim D.D. and with defendant and determined that there was nothing for the police to do.  Defendant, LASD Deputy 7, Iza, and Individual 2 eventually departed." (SAAVEDRA Plea 27:10-21).

h.  "Iza told defendant that he had engaged a private investigator and had expended large sums of money to locate Victim E.Z. and the laptop, without success. Iza told defendant that he was frustrated by the lack of progress made by the private investigator." (SAAVEDRA Plea 27:23-27).

i.  "During one such conversation, defendant volunteered that he could use his position as a law enforcement officer to obtain a search warrant for GPS location information associated with Victim E.Z.'s phone. Defendant told Iza that the warrant would enable them to locate Victim E.Z. and the laptop.

24

COMPLAINT

Defendant volunteered to secure a warrant for Victim E.Z.'s phone because defendant wanted to please Iza and to maintain Iza's business." (SAAVEDRA Plea 28:1-7).

j.    "[D]efendant applied for and obtained a search warrant from a Los Angeles County Superior Court judge authorizing law enforcement officers to obtain GPS location information associated with several telephone numbers, including Victim E.Z.'s number.    In the sworn affidavit supporting the application, defendant falsely stated that Victim E.Z.'s telephone number was associated with a suspect in a firearms investigation." (SAAVEDRA Plea 28:8-14).

k.    "Defendant began receiving pings from the service provider for Victim E.Z.'s phone soon after the judge authorized the illegally-obtained warrant. Defendant shared the pings identifying the approximate location of Victim E.Z.'s phone with Iza.    Defendant thereafter set out to locate Victim E.Z. using the pings from the service provider." (SAAVEDRA Plea 28:15-20).

l.    "[D]efendant traveled to a neighborhood in Los Angeles where GPS location information showed Victim E.Z.'s phone was located.    While searching the area, defendant spotted Victim E.Z. outside a residence in an apartment complex.    Defendant notified Iza that he found Victim E.Z., and the two proceeded to surveil the apartment complex and residence where defendant had seen Victim E.Z.    Iza later provided Victim E.Z.'s address to others, including to the private investigator Iza had engaged to locate Victim E.Z. and the laptop.    The private investigator and his team then surveilled Victim E.Z. for several months." (SAAVEDRA Plea 28:21-28, 29:1-3).

62.    Each such admission made by IZA and SAAVEDRA is necessarily imputed to LASD as a whole, as well as the other members of the Enterprise, namely the Corrupted Deputies and the remaining named Defendants.

## FIRST CAUSE OF ACTION

# NEGLIGENCE

## (Against Defendant COUNTY, and Does 1-5)

63.    Plaintiff re-alleges and incorporates by reference the allegations in all paragraphs above as though fully set forth therein.

64.    Defendant COUNTY owed Plaintiff and the public at large a duty to ensure that their deputies act lawfully and do not abuse their position of power.

65.    By virtue of the conduct outlined above, Defendant COUNTY, at minimum, breached their duty of care by allowing Corrupted Deputies to further the interests of a criminal organization, namely the Enterprise.

66.    Accordingly, Defendant COUNTY failed to act as a reasonably careful person would have acted in the same situation.

67.    Defendants' breaches were a substantial factor in causing Plaintiff's harm.

68.    As a direct, foreseeable, and proximate result of the wrongful conduct by Defendants as alleged herein, Plaintiff has been the victim of numerous violent attacks, coordinated efforts to damage his reputation, and has been damaged in an amount according to proof at trial that is in excess of the jurisdictional limit of this Court.

## <u>SECOND CAUSE OF ACTION</u>

## ATTEMPTED EXTORTION

## (Against all Defendants and Does 1-10)

69.    Plaintiff re-alleges and incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

70.    Defendant COUNTY is liable for the actions of the Corrupted Deputies, DUDGEON, RAWLINGS, SAAVEDRA C. QUINTERO CADMAN, MCGEE, RIVERA, RODRIGUEZ, and COBERG, who utilized law enforcement resources and committed the acts alleged herein during the course of their duties.

71.    IZA, and WOODY JR. engaged in a pattern of attempted extortion targeting Plaintiff and ZELOCCHI, threatening physical harm, reputational damage, and financial loss to coerce them into transferring cryptocurrency assets.

COMPLAINT

72.     On multiple occasions, IZA or a member of the Enterprise demanded that Plaintiff surrender the Laptop containing ZELOCCHI's cryptocurrency and repeatedly threatened Plaintiff with violence and reputational harm if he did not comply. IZA used threats of public humiliation and personal harm to Plaintiff, ZELOCCHI, and their loved ones as leverage to coerce compliance with his demands. In furtherance of his threats, IZA, with the help of CORNELIA and C. MEDIA, later engaged in a public smear campaign, falsely accusing Plaintiff being a hacker and a scammer, among other things, to damage Plaintiff's reputation.

73.     Similarly, the Enterprise mistakenly believed that Plaintiff was in possession of the Laptop and began directing extortionate threats towards him, threatening physical violence against Plaintiff and his family if he did not surrender the laptop.

74.     The extortion attempts were part of a broader scheme by the Enterprise, including WOODY SR. and the corrupted LASD deputies to gain access to ZELOCCHI's cryptocurrency holdings, while also using defamatory videos and public accusations to ruin Plaintiff's reputation in order to coerce his compliance.

75.     As a direct and proximate result of the Enterprise's attempted extortion, Plaintiff suffered significant emotional distress, reputational damage, and financial harm, due to the loss of potential clients and employers who discovered the defamatory content published by members of the Enterprise and has been damaged in an amount according to proof at trial that is in excess of the jurisdictional limit of this Court. Plaintiff also seeks compensatory damages, punitive damages, and any other relief the Court deems just and proper.

### THIRD CAUSE OF ACTION

### AIDING AND ABETTING ATTEMPTED EXTORTION

### (Against All Defendants and Does 1-10)

76.     Plaintiff realleges and incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

77.    Defendant COUNTY is liable for the actions of the Corrupted Deputies, DUDGEON, RAWLINGS, SAAVEDRA C. QUINTERO CADMAN, MCGEE, RIVERA, RODRIGUEZ, and COBERG, who utilized law enforcement resources and committed the acts alleged herein during the course of their duties.

78.    Defendants DUDGEON, RAWLINGS, SAAVEDRA C. QUINTERO CADMAN, MCGEE, RIVERA, RODRIGUEZ, COBERG, M. QUINTERO, CORNELIA, C. MEDIA, and DOES 1-10 aided and abetted IZA and WOODY JR. in their attempts to extort Plaintiff and ZELOCCHI by providing assistance and resources that facilitated the extortion scheme.

79.    IZA materially assisted in the extortion by coordinating the physical threats against Plaintiff, where M. QUINTERO forcibly took Plaintiff's laptop bag.

80.    DUDGEON, RAWLINGS, using their positions as former and active law enforcement officers, respectively, provided IZA with substantial assistance, including participating in physical confrontations with Plaintiff and leveraging their law enforcement connections to protect the extortion scheme and obstruct investigations.

81.    C. QUINTERO and SAAVEDRA, acting under the color of their official positions and leveraging access to sensitive law enforcement databases, unlawfully retrieved private information, including Department of Motor Vehicles (DMV) and vehicle registration records of ZELOCCHI and his associates, including Plaintiff. As revealed in SAAVEDRA's plea agreement, SAAVEDRA was able to obtain a warrant to track ZELOCCHI's location via his phone's GPS by lying in a sworn affidavit. C. QUINTERO and SAAVEDRA then provided this information to IZA for remuneration, knowing it would be used to surveil, track, and intimidate ZELOCCHI and his associates, including Plaintiff as part of the extortion scheme.

82.    The use of this unlawfully obtained data facilitated the Enterprise's efforts to locate, monitor, and pressure Plaintiff, making threats against his family and associates.

COMPLAINT

83.    C. QUINTERO also facilitated the introduction of IZA to M. QUINTERO, who directly participated in the physical robbery of Plaintiff, acts integral to the broader extortion efforts.

84.    The actions of Defendants DUDGEON, RAWLINGS, SAAVEDRA C. QUINTERO CADMAN, MCGEE, RIVERA, RODRIGUEZ, COBERG, M. QUINTERO, CORNELIA, and DOES 1-5 were done with full knowledge of the wrongful nature of the extortion scheme and with the intent to facilitate the achievement of WOODY JR.'s objectives.

85.    As a direct and proximate result of Defendants' aiding and abetting attempted extortion, Plaintiff suffered emotional distress, reputational harm, fear for his personal safety, and financial losses, and has been damaged in an amount according to proof at trial that is in excess of the jurisdictional limit of this Court. Plaintiff also seeks compensatory damages, punitive damages, and any other relief the Court deems just and proper.

### FOURTH CAUSE OF ACTION

### ASSAULT

### (Against Defendant M. QUINTERO, and Does 6-10)

86.    Plaintiff realleges and incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

87.    Defendant COUNTY is liable for the actions of the Corrupted Deputies, DUDGEON, RAWLINGS, SAAVEDRA C. QUINTERO CADMAN, MCGEE, RIVERA, RODRIGUEZ, and COBERG, who utilized law enforcement resources and committed the acts alleged herein during the course of their duties.

88.    M. QUINTERO engaged in conduct constituting assault against Plaintiff, intentionally performing acts that caused Plaintiff to have a reasonable apprehension of imminent harmful or offensive contact.

89.    M. QUINTERO, following the orders of IZA, approached Plaintiff, physically threatened him, and forcibly took his laptop bag. M. QUINTERO acted in an

COMPLAINT

aggressive and intimidating manner, creating an imminent threat of harm and causing Plaintiff to reasonably fear for his safety.

90.    Following the initial assault by M. QUINTERO, Plaintiff's vehicle was vandalized by individuals believed to be acting under IZA's orders (DOES 6-10). The assailants used a weapon to smash the rear window, both tail lights and side mirrors, along with the windshield of Plaintiff's car. Additionally, the body of the car was dented by what appeared to be someone kicking it, as evidenced by a shoe print along the left passenger door. The damage to Plaintiff's vehicle was severe and calculated, intended to intimidate him into complying with the Enterprise's demands. This incident further contributed to Plaintiff's fear of physical harm.

91.    Later, an unidentified assailant, believed to be acting under IZA's direction, threw a cement brick through the back kitchen window of Plaintiff's residence. This incident further contributed to Plaintiff's fear of physical harm.

92.    These actions by the Defendants were intentional, willful, and malicious, designed to intimidate and coerce Plaintiff into compliance with their extortionate demands.

93.    As a direct and proximate result of Defendants' actions, Plaintiff suffered serious physical injuries during the incidents in question, including bruising, abrasions, and other trauma as a direct result of Defendants' violent actions. As a result of the assault, Plaintiff experienced significant emotional distress, including ongoing anxiety, fear for personal safety, and disruption to his daily life and business activities. Plaintiff also seeks compensatory damages, punitive damages, and any other relief the Court deems just and proper.

## FIFTH CAUSE OF ACTION
### BATTERY
### (Against Defendant M. QUINTERO, and Does 6-10)

94.    Plaintiff realleges and incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

30

95.     Defendant COUNTY is liable for the actions of the Corrupted Deputies, DUDGEON, RAWLINGS, SAAVEDRA C. QUINTERO CADMAN, MCGEE, RIVERA, RODRIGUEZ, and COBERG, who utilized law enforcement resources and committed the acts alleged herein during the course of their duties.

96.     M. QUINTERO and DOES 6-10 engaged in intentional acts of battery against Plaintiff by willfully using physical force against Plaintiff without consent or legal justification.

97.     M. QUINTERO, following the orders of IZA, approached Plaintiff, physically threatened him, and forcibly took his laptop bag. M. QUINTERO acted in an aggressive and intimidating manner, creating an imminent threat of harm and causing Plaintiff to reasonably fear for his safety.

98.     Following the initial assault by M. QUINTERO, Plaintiff's vehicle was vandalized by individuals believed to be acting under IZA's orders (DOES 6-10). The assailants used a weapon to smash the rear window, both tail lights and side mirrors, along with the windshield of Plaintiff's car. Additionally, the body of the car was dented by what appeared to be someone kicking it, as evidenced by a shoe print along the left passenger door. The damage to Plaintiff's vehicle was severe and calculated, intended to intimidate him into complying with the Enterprise's demands. This incident further contributed to Plaintiff's fear of physical harm.

99.     Later, an unidentified assailant, believed to be acting under IZA's direction, threw a cement brick through the back kitchen window of Plaintiff's residence. This incident further contributed to Plaintiff's fear of physical harm.

100.    The Enterprise members' actions were part of a coordinated plan to intimidate and coerce Plaintiff into complying with their demands for cryptocurrency and other valuable assets.

101.    Defendants' use of force was intentional, willful, and done without Plaintiff's consent, resulting in harmful or offensive contact with Plaintiff's person.

102.    As a direct and proximate result of Defendants' battery, Plaintiff suffered

1   physical pain, emotional distress, and fear for his personal safety has been damaged in

2   an amount according to proof at trial that is in excess of the jurisdictional limit of this

3   Court. Plaintiff also seeks compensatory damages, punitive damages, and any other

4   relief the Court deems just and proper.

6   **SIXTH CAUSE OF ACTION**

7   **VIOLATION OF RICO 18 U.S.C. 1964(c) (d)**

8   **(Against All Defendants and DOES 1-10)**

9   103.   Plaintiff realleges and incorporates by reference each and every allegation

10   in the preceding paragraphs as though fully set forth herein.

11   104.   Defendant COUNTY is liable for the actions of the Corrupted Deputies,

12   DUDGEON, RAWLINGS, SAAVEDRA C. QUINTERO CADMAN, MCGEE,

13   RIVERA, RODRIGUEZ, and COBERG, who utilized law enforcement resources and

14   committed the acts alleged herein during the course of their duties.

15   105.   Defendants DUDGEON, RAWLINGS, C. QUINTERO, M. QUINTERO,

16   SAAVEDRA, CADMAN, MCGEE, RIVERA, RODRIGUEZ, COBERG, CORNELIA,

17   C. MEDIA, CHILDS, and PARAMOUNT, along with Nonparties IZA, AU, WOODY

18   JR., K. WOODY, and DOES 1-10 formed and participated in an enterprise within the

19   meaning of 18 U.S.C. § 1961(4), engaging in a continuous pattern of racketeering

20   activity to extort Plaintiff and ZELOCCHI.

21   106.   The Enterprise engaged in a pattern of racketeering activity, involving

22   multiple predicate acts as defined under 18 U.S.C. § 1961(1), including but not limited

23   to:

24       a. **Extortion and attempted extortion**: Defendants threatened both

25         Plaintiff and ZELOCCHI with physical harm, reputational damage, and

26         financial losses unless they surrendered cryptocurrency assets,

27         including the threats made by T. WOODY demanding $1 million in

28

32

COMPLAINT

Bitcoin, and the physical confrontations at the Arco gas station and the invasion of ZELOCCHI's home.

b. **Fraudulent legal actions:** Defendants AU and IZA each filed frivolous lawsuits against Plaintiff and ZELOCCHI, falsely accusing Plaintiff and ZELOCCHI of wrongful acts with the ulterior motive of harassment, pressure, and furthering the extortion scheme. These lawsuits were part of the enterprise's broader efforts to harm Plaintiff and ZELOCCHI's reputation and obstruct justice.

c. **Robbery and theft:** At the Arco gas station in Corona, California, Defendants IZA, DUDGEON, and RAWLINGS forcibly took ZELOCCHI's bags containing valuable personal and business items. This act was part of the enterprise's broader scheme to obtain access to ZELOCCHI's laptop, which they believed contained valuable cryptocurrency. In a separate incident Defendant M. QUINTERO, acting under the direction of IZA, forcibly took Plaintiff's laptop bag, mistakenly believing it contained ZELOCCHI's laptop with cryptocurrency.

d. **Kidnapping and robbery:** Defendants IZA, DUDGEON, and RAWLINGS kidnapped and forcibly detained ZELOCCHI at an Arco gas station in Corona, California. They believed that the bags in ZELOCCHI's car contained his cryptocurrency-laden laptop. The robbery of ZELOCCHI's bags, which occurred alongside the kidnapping, was designed to coerce him into surrendering control over the cryptocurrency.

e. **Defamation:** Defendants CORNELIA and C. MEDIA used stolen data obtained from Plaintiff's and ZELOCCHI's devices to produce and

33

COMPLAINT

disseminate defamatory videos online. These videos were further supplemented with altered photos and images obtained through illegal surveillance conducted by PARAMOUNT and CHILDS on Plaintiff and ZELOCCHI, as well as publicly available images from Plaintiff and ZELOCCHI's social media accounts and ZELOCCHI's various actor profile pages, including IMDb. The defamatory videos falsely portrayed ZELOCCHI as a scammer and criminal, with Plaintiff depicted as his accomplice, all in an effort to damage Plaintiff and ZELOCCHI's reputation. This defamation was part of the enterprise's broader scheme to publicly ruin Plaintiff and ZELOCCHI and deliver on their threats, thereby adding further pressure for their victims, namely Plaintiff and ZELOCCHI to comply with the extortion demands.

f. **Illegal surveillance:** Defendant CHILDS and PARAMOUNT conducted unauthorized surveillance of ZELOCCHI, including the taking of photographs and video footage within ZELOCCHI's private residences. This information was used to monitor ZELOCCHI's movements and intimidate him as part of the extortion scheme. Plaintiff is informed and believes that CHILDS and PARAMOUNT also conducted unauthorized surveillance of Plaintiff.

g. **Obstruction of Justice:** Defendants IZA, DUDGEON, and RAWLINGS used their law enforcement connections to obstruct justice by evading arrest and ensuring video evidence from the Arco gas station was destroyed. This included leveraging their influence to prevent internal investigations from moving forward. Further, the Corrupted Deputies each used their law enforcement resources to further the objectives of the Enterprise.

COMPLAINT

h. **Obstruction of Criminal Investigation:** DUDGEON and RAWLINGS, in their roles as law enforcement officers, actively obstructed investigations into the kidnapping of ZELOCCHI. They used their official capacities to impede criminal inquiries, ensuring that law enforcement investigations into the racketeering acts were thwarted. Further, the Corrupted Deputies each used their law enforcement resources to further the objectives of the Enterprise.

i. **Continuity and threat of future harm:** The enterprise engaged in a continuous pattern of racketeering activity over several years. The Defendants' ongoing attempts to coerce, defame, and extort Plaintiff and ZELOCCHI demonstrate the continuity of the enterprise.

107.    By virtue of the tortious conduct of defendants as alleged herein, Plaintiff has had to file a claim and otherwise protect and prosecute his rights as citizen of this State. As such, he is entitled to recover his attorney's fees and costs in this action against said defendants.

108.    As a direct and proximate result of Defendants' racketeering activities, Plaintiff has suffered significant financial losses, reputational harm, emotional distress, and physical injuries.

## SEVENTH CAUSE OF ACTION
### CIVIL CONSPIRACY
### (Against All Defendants and Does 1-10)

109.    Plaintiff realleges and incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

110.    Plaintiff is informed and believes that an unidentified number of COUNTY's employees, conspired with the Enterprise through implied, oral and/or written agreements and understandings, to commit the conduct alleged herein.

111.    Plaintiff is informed and believes that all such defendants were aware of,

35

COMPLAINT

agreed with and intended to perpetrate such conduct, and had similar interests and motives to do so.

112.   Plaintiff is informed and believes that the aforementioned conduct of the Corrupted Deputies, and each of them, was perpetrated by the principals and/or employees of COUNTY, and each of them, acting within the scope of their employment, and that such conduct was authorized, ratified, and done with the permission and consent of the officers, directors, and managing agents of COUNTY, and each of them. As such, Plaintiff is informed and believes that COUNTY is equally culpable.

113.   Plaintiff is informed and believes that the aforementioned conduct of Defendants, and each of them, was carried out as part of a deliberate and systematic scheme of wrongful criminal conduct with the goal of extorting ZELOCCHI of his cryptocurrency assets. Such conduct was oppressive, fraudulent, and malicious, and subjected Plaintiff and ZELOCCHI to cruel and unjust hardship in a willful and conscious disregard of their rights, warranting exemplary and punitive damages pursuant to Civil Code Section 3294, for the reasons set forth herein and for at least the following reasons:

    a.   It was done with the purpose and intent of subjecting Plaintiff to abuse and threats in an effort to extort Plaintiff of ZELOCCHI's cryptocurrency assets; and

    b.   It was done with the purposeful and intentional design of putting their own business and pecuniary interests ahead of Plaintiff's rights and interests, at the expense of Plaintiff's rights to pursue his own livelihood and realize the fruits of his endeavors.

114.   By virtue of the tortious conduct of defendants as alleged herein, Plaintiff has had to file a claim and otherwise protect and prosecute his rights as citizen of this State. As such, he is entitled to recover his attorney's fees and costs in this action against said defendants.

115.   As a direct, legal, and proximate result of the foregoing, Plaintiff has

remained in fear of further harm due to the continued threats and the ongoing criminal activities of the Enterprise and has continued to suffer from emotional harm.

## EIGHTH CAUSE OF ACTION

### NEGLIGENT HIRING AND SUPERVISION

### (Against Defendant LASD, and Does 1-5)

116.    Plaintiff realleges and incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

117.    Although Plaintiff is informed and believes that Corrupted Deputies, and each of them, committed the tortious conduct alleged herein, and are otherwise responsible for the facts, events and circumstances alleged herein, if any principals and/or employees of COUNTY were in whole or in part also so responsible, Plaintiff is informed and believes that COUNTY knew or in the exercise of reasonable diligence should have known the same, and should have taken reasonable measures to prevent, mitigate or remedy such conduct, including but not limited to exercising reasonable care to refrain from hiring negligent deputies and/or taking proper steps to supervise such deputies and adopt and implement reasonable standards and protocol for ensuring their competence.

118.    In such case, Plaintiff is informed and believes that COUNTY's inaction, perpetrated with conscious disregard and deliberate indifference to, or tacit authorization of, the conduct alleged herein, was a substantial factor in causing his general and special damages.

119.    By virtue of the tortious conduct of defendants as alleged herein, Plaintiff has had to file a claim and otherwise protect and prosecute his rights as citizen of this State. As such, he is entitled to recover his attorney's fees and costs in this action against said defendants.

120.    As a direct, legal, and proximate result of the foregoing, Plaintiff has remained in fear of further harm due to the continued threats and the ongoing criminal activities of the Enterprise and has continued to suffer from emotional harm.

COMPLAINT

**NINTH CAUSE OF ACTION**

**TRESPASS TO LAND**

**(Against All Defendants, Does 1-10)**

121.   Plaintiff realleges and incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

122.   Defendant COUNTY is liable for the actions of the Corrupted Deputies, DUDGEON, RAWLINGS, SAAVEDRA C. QUINTERO CADMAN, MCGEE, RIVERA, RODRIGUEZ, and COBERG, who utilized law enforcement resources and committed the acts alleged herein during the course of their duties.

123.   Plaintiff is informed and believes that IZA and DOES 6-10, without permission or consent, entered Plaintiff's property located at 7452 Upper Bay Dr, Huntington Beach, California, which constitutes a willful act of trespass. Defendants entered Plaintiff's property without permission or consent on at least two subsequent occasions.

124.   Defendants' entries onto Plaintiff's property were unauthorized, intentional, and conducted without Plaintiff's consent, with the intent to commit unlawful acts, including but not limited to vandalize Plaintiff's property and/or to intimidate, harass, and threaten Plaintiff.

125.   As a direct result of Defendants' trespass, Plaintiff has suffered and continues to suffer emotional distress, anxiety, and fear for his personal safety and security of his property.

126.   The unauthorized entry by Defendants has caused Plaintiff to incur expenses related to repairing damages incurred by their vandalizing of Plaintiff's car and kitchen window, and has deprived him of the peaceful enjoyment of his property.

127.   Plaintiff is also entitled to and will seek punitive damages arising from the Enterprise's malicious, willful, and criminal acts discussed herein. Punitive damages are awarded if a defendant acted with "oppression, fraud or malice." Civ. Code, § 3294(a). The Enterprise's conduct, including willfully trespassing on Plaintiff's property with the

intent to vandalize his property, constitute malicious, fraudulent and oppressive acts that were carried out in a willful and conscious disregard of Plaintiff's rights, warranting punitive damages. See Civ. Code, § 3294(c)(1).

//

//

//

### TENTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Against All Defendants, and Does 1-10)

128.   Plaintiff realleges and incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

129.   Defendant COUNTY is liable for the actions of the Corrupted Deputies, DUDGEON, RAWLINGS, SAAVEDRA C. QUINTERO CADMAN, MCGEE, RIVERA, RODRIGUEZ, and COBERG, who utilized law enforcement resources and committed the acts alleged herein during the course of their duties.

130.   IZA, WOODY JR., M. QUINTERO, and DOES 1-10 intentionally and recklessly engaged in extreme and outrageous conduct aimed at causing Plaintiff severe emotional distress.

131.   Defendants repeatedly threatened Plaintiff with physical violence, reputational harm, and financial ruin in an effort to coerce compliance with their extortionate demands. These threats were made in person, through text messages, and through various other forms of communication, including defamatory public content.

132.   The conduct of Defendant M. QUINTERO where he physically assaulted Plaintiff and took his personal belongings, caused Plaintiff to suffer intense fear, anxiety, and distress for his personal safety.

133.   IZA and DOES 6-10 vandalized Plaintiff's car, further instilling fear for Plaintiff's life and security, leading to significant psychological trauma and ongoing emotional distress.

134.   Defendants CORNELIA and C. MEDIA's defamatory campaign against Plaintiff has left Plaintiff's reputation severely damaged. The false accusations of criminal behavior, including claims that Plaintiff is a scammer and fraud, caused him to lose multiple business opportunities and partnerships. Furthermore, Plaintiff has suffered severe emotional distress due to the public nature of these false statements, including humiliation, anxiety, and damage to personal and professional relationships.

135.   As a direct and proximate result of Defendants' intentional and reckless actions, Plaintiff has suffered severe emotional distress, including anxiety, fear, sleeplessness, and ongoing psychological trauma. This emotional distress continues to be a major factor in Plaintiff's apathy, lack of motivation, and his unemployment.

136.   Plaintiff is also entitled to and will seek punitive damages arising from the Enterprise's malicious, willful, and criminal acts discussed herein. Punitive damages are awarded if a defendant acted with "oppression, fraud or malice." Civ. Code, § 3294(a). The Enterprise's conduct, including engaging in making threats to Plaintiff's life and the lives of his loved ones, and engaging in a defamatory campaign to severely damage his reputation, constitute malicious, fraudulent and oppressive acts that were carried out in a willful and conscious disregard of Plaintiff's rights and subjected him to constant fears for his safety, warranting punitive damages. See Civ. Code, § 3294(c)(1).

## ELEVENTH CAUSE OF ACTION

### DEFAMATION PER SE

### (Against Defendants CORNELIA, C. MEDIA, and Does 1-10)

137.   Plaintiff realleges and incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

138.   Defendants CORNELIA, C. MEDIA, and DOES 1-10 made and published false, defamatory statements about Plaintiff to third parties, including the public, through various online platforms, with the intent to harm Plaintiff's reputation.

139.   IZA, in coordination with CORNELIA and C. MEDIA, falsely accused Plaintiff of engaging in illegal and unethical conduct, including theft of a

40

cryptocurrency-containing laptop that ZELOCCHI rightfully owned, and falsely portrayed Plaintiff as a criminal involved in fraudulent activities.

140. Defendants CORNELIA and C. MEDIA produced, published, and disseminated defamatory videos across various platforms such as YouTube, Rumble, and other social media outlets. These videos falsely portrayed Plaintiff as engaging in criminal conduct, theft, and dishonesty, without any factual basis, and were disseminated to a wide audience with the specific intent to damage Plaintiff's personal and professional reputation.

141. Further, Defendants orchestrated an elaborate scheme to criminally impersonate Plaintiff by hacking Disneyland's Instagram account and posting defamatory content that falsely framed Plaintiff as responsible for the breach. This content included derogatory captions and fabricated statements that portrayed Plaintiff as a hacker, causing significant public humiliation and irreparable damage to his online reputation.

142. The defamatory statements made by Defendants were false, unprivileged, and made with actual malice, as Defendants knew the statements were false or acted with reckless disregard for their truth.

143. The statements made by Defendants constitute defamation per se, as they falsely accused Plaintiff of criminal conduct, dishonesty, and moral turpitude, which are inherently damaging to Plaintiff's reputation, both personally and professionally.

144. As a result of the defamatory videos and statements published by Defendants, Plaintiff's professional reputation has been severely damaged. The false accusations of criminal behavior, including claims that Plaintiff is a scammer and fraud, caused him to lose multiple business opportunities and partnerships. Further, the defamatory videos and statements have contributed and continue to contribute greatly to Plaintiff's current unemployment.

145. Furthermore, Plaintiff has suffered severe emotional distress due to the public nature of these false statements, including humiliation, anxiety, and damage to

personal and professional relationships. He has also incurred significant costs in attempting to remove defamatory content and counter the false narratives published online by Defendants, further compounding his financial losses and emotional trauma.

146.   Plaintiff is also entitled to and will seek punitive damages arising from the Enterprise's malicious, willful, and criminal acts discussed herein. Punitive damages are awarded if a defendant acted with "oppression, fraud or malice." Civ. Code, § 3294(a). The Enterprise's conduct, including engaging in a defamatory campaign to severely damage his reputation, constitute malicious, fraudulent and oppressive acts that were carried out in a willful and conscious disregard of Plaintiff's rights and subjected him to severe embarrassment and irreparable harm to his reputation, warranting punitive damages. See Civ. Code, § 3294(c)(1).

**TWELVETH CAUSE OF ACTION**

**CONVERSION**

**(Against all Defendants and Does 1-10)**

147.   Plaintiff realleges and incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

148.   Defendant COUNTY is liable for the actions of the Corrupted Deputies, DUDGEON, RAWLINGS, SAAVEDRA C. QUINTERO CADMAN, MCGEE, RIVERA, RODRIGUEZ, and COBERG, who utilized law enforcement resources and committed the acts alleged herein during the course of their duties.

149.   Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages.

150.   Every officer of this state, or of any county or city, and every deputy, clerk, or servant of that officer, who misappropriates for any use or purpose any property in his or her possession or under his or her control, or secretes it with a fraudulent intent to appropriate it to that use or purpose, is liable for conversion.

42

COMPLAINT

151.   At all relevant times mentioned herein, Plaintiff was the rightful owner of the property that was converted and misappropriated by Defendants in the manner set forth above.

152.   Defendants' wrongful acts in converting and misappropriating the property despite Plaintiff's requests to have said property returned, have effectively caused the eradication of Plaintiff's rights to the property.

153.   As a direct, foreseeable, and proximate result of the wrongful conduct by Defendants as alleged herein, Plaintiff has been deprived of the possession and control of the property and has been damaged in an amount according to proof at trial that is in excess of the jurisdictional limit of this Court.

154.   Plaintiff is also entitled to and will seek punitive damages arising from the Enterprise's malicious, willful, and criminal acts discussed herein. Punitive damages are awarded if a defendant acted with "oppression, fraud or malice." Civ. Code, § 3294(a). The Enterprise's conduct, including converting and misappropriating the property, constitute malicious, fraudulent and oppressive acts that were carried out in a willful and conscious disregard of Plaintiff's rights, warranting punitive damages. See Civ. Code, § 3294(c)(1).

## THIRTEENTH CAUSE OF ACTION
### TRESPASS TO CHATTEL
### (Against All Defendants and Does 1-10)

155.   Plaintiff realleges and incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

156.   In order to prove a claim for trespass to chattel, Plaintiff must show: 1) that Plaintiff owned/had the right to possess the personal effects; 2) That Defendant intentionally interfered with Plaintiff's use or possession of the personal effects or damaged the personal effects; 3) that Plaintiff did not consent; 4) that Plaintiff was harmed; and 5) that Defendant's conduct was a substantial factor in causing Plaintiff's harm.

157.  Defendants intentionally interfered with Plaintiff's use and possession of the personal effects by intentionally converting and misappropriating the personal effects of which Plaintiff is the rightful owner.

158.  Plaintiff did not consent to such conversion and misappropriation, and Defendant concealed the same from Plaintiff.

159.  As a proximate result of the foregoing, Defendant has caused damage to Plaintiff, as alleged herein, resulting in a trespass upon Plaintiff's property interests in the personal effects and has been damaged in an amount according to proof at trial that is in excess of the jurisdictional limit of this Court.

160.  Plaintiff is also entitled to and will seek punitive damages arising from the Enterprise's malicious, willful, and criminal acts discussed herein. Punitive damages are awarded if a defendant acted with "oppression, fraud or malice." Civ. Code, § 3294(a). The Enterprise's conduct, including converting and misappropriating the personal effects, constitute malicious, fraudulent and oppressive acts that were carried out in a willful and conscious disregard of Plaintiff's rights, warranting punitive damages. See Civ. Code, § 3294(c)(1).

## FOURTEENTH CAUSE OF ACTION
### VIOLATION OF CALIFORNIA PENAL CODE §496
### (Against ALL DEFENDANTS, and DOES 1-10)

161.  Plaintiff realleges and incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

162.  By knowingly, receiving, withholding, concealing, diverting, and misappropriating Plaintiff's personal effects in the manner described herein, Defendants violated Penal Code section 496(a).

163.  As a foreseeable and consequential result of Defendants' knowing, willful, and wrongful acts, as described above, Plaintiff has suffered damages and has reasonably incurred legal fees and costs of suit to vindicate his rights in amounts to be proven at trial.

164.   Pursuant to Penal Code section 496(c), Plaintiff is entitled to treble the amount of his compensatory damages, as well as his attorneys' fees and costs of suit.

### FIFTEENTH CAUSE OF ACTION

### DECLARATORY RELIEF

### (Against All Defendants and Does 1-10)

165.   Plaintiff realleges and incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

166.   An actual controversy has arisen and now exists between Plaintiff and Defendants concerning their respective rights and duties, in that Plaintiff contends, and Defendants dispute or deny, that Defendants are liable for the wrongful acts and omissions described in this Complaint, including but not limited to attempted extortion, aiding and abetting, assault, battery, violation of RICO, civil conspiracy, negligent hiring and supervision, trespass to land, intentional infliction of emotional distress, defamation per se, conversion, trespass to chattel, and violation of California Penal Code Section 496.

167.   Plaintiff seeks a judicial declaration of the parties' rights and obligations, including but not limited to a declaration that: (a) Defendants, and each of them, are liable to Plaintiff for the wrongful acts and omissions alleged herein; (b) Plaintiff is entitled to damages and other relief as a result of Defendants' conduct; and (c) Defendants are not entitled to any immunity or defense that would bar Plaintiff's claims as alleged in this Complaint.

168.   A judicial declaration is necessary and appropriate at this time so that Plaintiff may ascertain his rights and Defendants' obligations, and to avoid a multiplicity of actions and further harm to Plaintiff

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendants as follows:

**ON THE FIRST AND EIGHTH CAUSES OF ACTION**

1.   For special and general damages according to proof.

45

COMPLAINT

**ON THE SECOND, THIRD, FOURTH, FIFTH, NINTH, ELEVENTH, TWELVETH, AND THIRTEENTH CAUSES OF ACTION**

1.    For special and general damages according to proof;

2.    For compensatory damages according to proof; and

3.    For exemplary and punitive damages in amounts that are yet to be ascertained.

**ON THE SIXTH, SEVENTH, AND TENTH CAUSES OF ACTION:**

1.    For special and general damages according to proof; and

2.    For exemplary and punitive damages in amounts that are yet to be ascertained.

**ON THE FOURTEENTH CAUSE OF ACTION:**

1.    General damages, special damages, compensatory damages, and consequential damages, according to proof at trial; and

2.    For recovery of attorney's fees as allowed by law.

**ON THE FIFTEENTH CAUSE OF ACTION:**

1.    For a judicial declaration that a declaration that: (a) Defendants, and each of them, are liable to Plaintiff for the wrongful acts and omissions alleged herein; (b) Plaintiff is entitled to damages and other relief as a result of Defendants' conduct; and (c) Defendants are not entitled to any immunity or defense that would bar Plaintiff's claims as alleged in this Complaint.

**ON ALL CAUSES OF ACTION:**

1.    For general, special, and consequential damages in an amount according to proof at trial;

2.    For recovery of costs and expenses of suit as allowed by law; and

//

//

/

//

3.     For such other and further relief, both legal and equitable, as the court may deem just and proper.

Dated:   January 2, 2026                    POWERHOUSE LEGAL, P.C.


_____
Marc Y. Lazo
Attorney for Plaintiff David Do

COMPLAINT